Statement.
MONROE, J.
Plaintiff brings this petitory action for the recovery of about 229 acres of land, which are said to form part of the Elma (formerly called “El Dorado” and “Sarah”) plantation, in the parish of Iberia, of which land they allege that defendant is in unlawful possession. Defendant, for answer, avers that the land in question is part of Morbihan plantation, of which it is owner, and that it and its authors have been in open, continuous, and uninterrupted possession thereof, according to a boundary which has been recognized by the owners of El Dorado, Sarah, or Elma plantation, for more than 40 years; and defendant pleads estoppel and prescription. From certain plats of surveys which have been offered by the litigants, respectively, the subjoined rough “Sketch A” has been prepared as an aid to the approximate delimitation of the land and the more intelligible statement of the subject-matter in controversy, the unshaded subdivisions, within the letters F, G, H, I, J, K, L, M, N, representing the acreage constituting, as it is alleged, Elma plantation, including the disputed territory, which *273 is -within the letters E, A, B, M, L, K, J, I, H, and the shaded subdivisions representing the acreage constituting, or said to have constituted, Morbihan plantation.

*272

*273 Plaintiffs acquired the title exhibited by them from Landry & Lanier by two acts, passed in 1901 and 1903, respectively; Landry (who subsequently sold an undivided half interest to Lanier) acquired from Emile Gajan October 13, 1899; Gajan acquired from Hes-singer June 19, 1899; Hessinger acquired at a sale made by the sheriff under an execution against the Sarah Planting & Refining Company, May 6, 1899; the Sarah Planting & Refining Company acquired from Jos. Weil June 29, 1898; Weil acquired at a sale by' the sheriff in a proceeding against Pierce & Canty June 25, 1S98; Pierce & Canty acquired from Weil April 8, 1S97; Weil acquired from the widow and heirs of Marx Levy April 8, 1897; and at this point there is a hiatus in the proof, the act of sale to Weil containing a recital to the effect that the vendors had acquired by reason of their having been put in possession as widow in community and heirs of Marx Levy, who (so the act recites) had acquired the property by purchase from Mrs. Harriet P. Arnst, wife-of Lucius D. Hopkins, but neither the judgment putting in possession nor the act of sale from Mrs. Hopkins to Marx Levy being in the- record. Passing this, it is shown that Mrs. Harriet P. Hopkins acquired the property from Celestin Lejeune and others; that Lejeune and others (including Theophile Aucoin, who. subsequently sold his interest to his co-owners) acquired from “Mrs. Jane Bramwell, widow of Harry Hopkins”; that Mrs. Jane (Bramwell) Hopkins acquired at a sale made by the sheriff in execution of a judgment obtained by her against J. J. Mistrot and others; and that Mistrot and others acquired by purchase from “Mrs. Jane Bramwell, widow of Harry Hopkins.” Here there is another hiatus in the proof, there being nothing in the record to show when or from whom Mrs. Jane Bramwell Hopkins acquired the property. It is not unlikely that she was the widow of Harvey, and not Harry, Hopkins ; but there is no proof of that fact, or that there existed a community of acquets between her and her husband, nor is it shown that she was his heir. Passing this, also, it appears that on April 8, 1848, Harvey Hopkins acquired by purchase from Leonard J. Smith an undivided half interest in certain property, including the following: “A piece of land situated in the said parish of St. Martin at a place called ‘Petit Eausse Pointe,’ measuring four arpents on the right bank of the River Teche, with the depth adjoining the land of Madame Dubuclet, bounded on the upper side by a portion of the land now (or lately) belonging to Mrs. Weeks and on the lower side by lauds of E. O. Boutte”, and “a tract of land lying, situated, and being at the same place, measuring fifteen arpents and two-thirds of an arpent front, more or less, on the right bank of the River Teche, with the depth adjoining the lands of Madame Dubuclet, bounded on the upper side by the lands of Edouard Hebert and below by the lands of Mrs. Weeks, above mentioned” — and that, on January 6, 1852, at a sale made to effect a partition, said Harvey Hopkins acquired the other half interest in the land so described.
It appears that the tract first above described was taken from the eastern side of the lot No. 2, as indicated on the “Sketch A,” and it is not pretended that it has ever, since the purchase in question, extended further back than the southern lines of the sections 14 and 15, as indicated on said sketch. It also appears that the tract secondly above described was taken from the section 77, as indicated on the sketch, and includes, in point of fact, the frontage embraced between the letters O and N, though the measurement of that frontage seems to be 16.20, instead of 15% arpents. It further appears that on January 29, 1867, Harvey Hopkins purchased, *274 at a sale made In the succession of Mrs. Mary Olara Conrad, deceased wife of John Moore, “one piece of land, having ten arpents on the Bayou Teche, running back to the land belonging to Dr. Duperier [between] parallel lines, containing 99 superficial arpents, more or less, * * * said land bounded on both sides by the purchaser’s land,” which tract is designated on Sketch A as “Lot 1.”
The act by which “Mrs. Jane Bramwell, widow of Harry Hopkins,” sells to J. J. Mistrot and others, contains the following description and recitals, concerning the property sold, to wit:
“A certain tract of wood and prairie land situated on the right bank of Bayou Teche, at a place called ‘Eausse Pointe,’ in the parish of Iberia, the same being a part of Sec. 9, T. 12 S., R. 7 E, containing 723 arpents, bounded above by the lands of P. Hebert and below by land of Dr. Duperier. Said land is sold according to a survey and plat made by E. G. Burbank, dated November, 1868.”
The name “El Dorado Plantation” was given to the property for the first time, so far as the conveyances show, in the act of sale from “Mrs. Jane Bramwell, widow of Harry Hopkins,” to Lejeune and others, in February, 1877, which act contains the following description and recitals:
“A certain plantation at Fausse Pointe, known by the name of ‘El Dorado,’ measuring 723 arpents, more or less, bounded north by P. Hebert, south by Dr. A. Duperier, east by lands of Decuir’s heirs, and west by Dr. Duperier. The said plantation is the same purchased by vendor at sheriff’s sale in the matter of the seizure and sale made at the instance of vendor in the case entitled ‘Mrs. Jane Hopkins v. J. J. Mistrot et al.,’ on the 3d day of July, 1876. The vendor sells all the land in the said plantation known under said name. The sale is made with reference to boundaries, * * * and the said vendor hereby promises that she and her heirs shall and will forever warrant and defend the title to the said purchasers against all legal claims and demands whatever. The vendor, moreover, transfers unto said purchasers all the rights and actions of warranty to which she is entitled against all former proprietors of the property conveyed, subrogating said purchasers to said rights and actions, to be by them enjoyed and exercised in the same manner as they might have been by the present vendor.”
The later conveyances, beginning with that from Hessinger to Gajan, in June, 1899, and including those by which the plaintiff acquired, contain a reservation reading as follows, viz.:
“It is well understood that the vendor does not sell any more than he may have acquired, and is not bound for any deficit in the number of acres that may appear to belong to the plantation sold, subrogating, however, the vendee to all rights, title, and interest as they may appear; this sale being made by metes and bounds, purchaser being well acquainted with metes and bounds of said plantation.”
The “survey and plat” by Burbank, referred to in the first sale by Mrs. Jane (Bramwell) Hopkins, has not been produced.
Upon the other hand, Dr. Duperier, one of the authors to whom the defendant traces title, is shown to have acquired the following lands, to wit: On March 8, 1854, from Madame Dubuclet, according to a plan drawn by A. D. Minor, parish surveyor, a copy of which has been filed in evidence, the different tracts designated on Sketch A by the numbers 20, 13, 14, 41, 42, 45, 61 (either the number 14 or the number 45 including the tract to which, on Sketch A, the number 15 has been given); on October 10, 1854, from Louis St. Marc Darby, the tract designated on Sketch A as “Lot 4,” described in the act of purchase as bounded, as to its depth, “par la terre du dit Sieur Alfred Duperier”; on April 25, 1856, from Alexis Poymerau, the tract designated on Sketch A as “Lot 3,” described as “mesurant dix arpents de face a la dite riviere sur environ dix ou douze arpents de profondeur”; on April 25, 1870, from A. Hebert, fractional section 33 in township 11 S., range 7 E., and lots 1, 2, 3, and 4 in section 4 of township 12 S., range 7 E., which tracts are thus designated on Sketch A. Dr. Duperier acquired other lands, such as are indicated on Sketch A, and possibly others besides; but those which have been specially mentioned are all that concern this litigation. On February 10, 1870, he conveyed to his wife, by dation en *275 paiement, “(1) a certain sugar plantation * * * consisting of several tracts of land set forth and described in act of sale from Mistress Joseph Dubuclet, * * *” of date March 8, 1854; (2) the tract acquired from Louis St. Marc Darby October 10, 1854; (3) the land acquired from Alexis Poymerau April 25, 1856; and other tracts which he had acquired from other persons.
By acts of March 1, 1884, and January 6,1885, Madame Duperier conveyed the property so acquired by her to Archer & Renoudet.
By act of June 24, 1892, Archer & Renoudet sold a portion of the property so acquired to William R. Taylor, by a description reading in part as follows, to wit:
“A certain sugar plantation, measuring 1,500 acres of cleared -sugar land, * * * in that section known * * * as ‘Little Eausse Pointe,’ bounded on the north by the public road leading from New Iberia to said Little Eausse Pointe and separating said plantation from lands of P. L. Renoudet and W. R. Archer; on the south by lands of the estate of Mary O. Moore and Bayou Teche; on the east by lands of I-Iopkins, or assigns, Hebert, Lucien Decuir, and others; and on the west by lands of Viel Decuir, Hackley, Oollins, Marvin, and Dotty, and the public road separating said lands from the lands of Childs and leading from New Iberia to Coulee La Chute. All of said lands purchased by Dr. Alfred Duperier by act of purchase from Mrs. Celestine Marie Dubuclet * =:• =s March 8, 1854. * * « A certain tract of land acquired from [by] Alfred Duperier by purchase from Alexis P- by act of sale before Gaspard Ratier, Not., on the 29th day of January, 1855 [evidently referring to the tract bought by Dr. Duperier from Alexis Poymerau April 25, 1856]. A certain tract of land acquired by purchase from Alexis Hebert * * * on the 25th day of April, 1870. A fourth tract, acquired by Alfred Duperier from Louis St. Marc Darby and wife * * * on the 10th of October, 1870, being parts of the land purchased by the present vendors from Mrs. Emma Mille [wife of Dr. Duperier]. * * * The whole forming an aggregation of 1,500 acres.”
Upon March 11, 1893, the property thus acquired by Taylor was sold under execution to Marx Levy as a “certain tract of land or sugar plantation, situated * * * on the west bank of Bayou' Teche, at about two and one-half miles from New Iberia, and known as the ‘Morbihan Plantation,’ containing about 1,500 acres of cleared land, and being bounded in front by Bayou Teche, in the rear by the public road leading to New Iberia, above by lands of Archer and Renoudet, and below by lands of the estate of Darby,” etc.
The record does not contain the act whereby Marx Levy sold the property so acquired, but on January 27, 1894, Meyer and Joseph Weil sold it, according to the foregoing description, to the New Iberia' Refining & Planting Association by an act which recites that they had purchased it from Marx Levy by notarial act of date April 4, 1893; and on June 24,1899, that association sold said property to the New Iberia Sugar Company, Limited.
Dr. Duperier; who owned the greater part of the land constituting what is now called “Morbihan Plantation” from 1854 until the sale to his wife in 1870, and whose wife owned it until 1884, testifies quite positively that the fences, as indicated approximately on Sketch A, have served' to separate that property from the Elma plantation ever since the date of his acquisition, and in so testifying he is corroborated in a greater or less degree by Desire Bonin, who has lived as a tenant on section 4 since 1875; by Placide Bonin, who has known the place for 40 years and has lived there since 1888; by A. Theriot, who has lived on the place since 1894; by Theodule Vital, who has lived adjoining the Morbihan plantation nearly 60 years; by A. Vital, who has known the property for 18 or 20 years; and by 1-Iawk Collins, who has lived on the place and has known the fences for 20 years or more.
As against this, the plaintiffs have the testimony of A. Excurex and T. Aucoin, who (with Lejeune, Hebert, and Roger) owned the Elma place for a while, dating from 1877; of Philip and Belisaire Hebert (sons of the Hebert mentioned), who lived on the Elma place when their father was part owner of *276 it; of Lucien Hebert and Jules Verret, wbo had lived on the»opposite side of the bayou for many years; and of Aristide Decuir, who owns the adjoining property upstream — to the effect that the fence, running from A to B (on Sketch A) was' not put there until after 1879, it being practically conceded that it has been there since 1880.
The sincerity of Dr. Duperier is not at all questioned, but the counsel for plaintiff think he testified in error as to the particular fence to which his testimony was intended to be applied; and such a mistake may possibly have been made. In this connection, however, it is to be remarked that we do not understand any of the witnesses as testifying that the line of fencing indicated by the letters E, A, P, C, on Sketch A, is of later date than as testified to by Dr. Duperier. On the contrary, the attention of the plaintiff’s witnesses, and for the most part of the defendant’s, was attracted to the line of fencing indicated by the letters A, P, B, which divides the front lands from those in the -rear; and, beyond the testimony of Dr. Duperier, who testifies that all of the fencing, as it now stands, has been there since 1854, there was but little said concerning the line running from front to rear on the lower side of the Elma, and constituting the practical boundary between that and the Morbihan, plantation.
Opinion.
The failure of the plaintiffs to supply the link in their chain which should connect the title of the “widow and heirs of Marx Levy” with that of Mrs. Harriet P. Hopkins leaves them apparently in the position of acquiring-through mesne conveyances, in 1897, from persons in whom no title is shown, property which was then, and had been for many years, in the possession of other persons, claiming as owners. If, however, we assume that the recital in the sale of the widow and heirs of Levy to Weil, to the effect that the vendors had acquired the property from Mrs. Harriet P. Hopkins, is sufficient to prove the fact of such acquisition, and we proceed with the inquiry, we find that, in 1869, “Mrs. Jane Bramwell, widow of Harry Hopkins,” in whom no title is shown, sold the property which is now said to constitute the Elma plantation by an entirely new description, with the recital, unauthorized from any point of view that we have been able to discover, that it consisted of 723 superficial arpents. We say unauthorized, because, even if we assume that the vendor was not the widow of Harry Hopkins, as she is described in all the acts to which she is a party, but was the widow (in community) of Harvey Hopkins, and also his sole heir, and in that way became the owner of the property that had been purchased in his name, the fact remains that Harvey Hopkins acquired lot 1 of section 9 by a title under which he could not have been heard to claim any land lying more than 10 or 12 arpents back from the bayou, whereas the recital in the act of sale referred to would require that the lines of lot 1, described in the sale to Harvey Hopkins as “having ten arpents on Bayou Teche, running back to the land belonging to Dr. Duperior, * * * containing 99 superficial arpents, more or less,” should be extended back some 25 or 30 arpents, beyond the land of Dr. Duperier, and should include nearly 300 superficial arpents, instead of 99, or three times as much land as the title of Harvey Hopkins calls for. This of itself would be sufficient to defeat the plaintiff's claim, in so far as it relates to land in section 9 (i. e., that lying to the westward of the line O, K, on the Sketch A), since the plaintiff in a petitory action, in order to recover, must at least show a better title to the property sued for than the defendant in possession. There are, however, some additional reasons, which are applicable, also, to the land lying in the rear of section 77 (i. e., to the eastward of the line O, K). The witness *277 es on both sides agree that the fence, A, P, B, behind which that land lies, had been where it now is, inclosing the land as part of Morbihan plantation, for more than 20 years before this suit was brought, and the man who built it testifies that in so doing he rebuilt, after a severe storm in 1879, a fence which had been destroyed by that storm and which had been in the same place for many years before; thus corroborating the testimony of Dr. Duperier to the effect that the fences are all of them now as they were in 1854. • Giving full weight, however, to the views of the learned judge ad hoe, for whose opinion in the matter we have the highest respect, and conceding that the prescription aequirendi causa, based on possession without title, cannot be made up of different periods of possession held by successive occupants, where the one who follows has no more title than the one who precedes, it appears that for more than 10 years prior to the institution of this suit the defendant and its authors had been in open, notorious, continuous, and uninterrupted possession as owners of the land claimed, under titles which, the circumstances considered, might fairly have included that land.. Thus, in the sale by the sheriff to Marx Levy, of date March 11, 1893, the property is described as “a certain tract of land, or sugar plantation, situated * * * on the west bank of Bayou Teche, at about two and one-half miles from New Iberia, and known as ‘Morbihan Plantation,’ containing 1,500 acres of cleared land, being bounded in front by Bayou Teche, in the rear by the public road leading to New Iberia, above by the lands of Archer' & Renoudet, and below by lands of the estate of Darby,” etc. It is quite clear from this description, however inaccurate or deficient, that the property sold was “Morbihan Plantation” as it then stood, and it cannot be denied that as it then stood Morbihan plantation consisted in part of the land here claimed, which was under fence and had been under fence, certainly for more than 20, and possibly for more than 40, years. The front land, in the rear of which the tract in question lies, had been acquired by Harvey Hopkins by two acts of sale (in 1848 and 1852), in one of whicli it is described as situated at Petit Fausse Pointe, “measuring 15 arpents and % of an arpent, more or less, on the right bank of the River Teche, with the depth adjoining the lands of Madame Dubuclet, bounded on the upper side by the lands of Edouard Hebert, and below by the lands of Madame Weeks.” In the other act, by which the remaining undivided half interest was acquired (and which is in the French language), it is said, “Avec une profondeur joignat encore une térre de Madame Joseph Dubuclet,” which we take to mean that the tract was sold as running back to the land of Madame Dubuclet. As far as we are able to discover from the record, however, Madame Dubuclet owned no land in the rear, unless the land now claimed by the plaintiffs was at that time considered her property. Be that as it may, the disputed tract, as we have said, was, when sold, in March, 1893, properly or improperly incorporated in Morbihan plantation, had been so incorporated for more than 20, and perhaps for 40, years, without complaint from any one, so far as the record shows, and, when Morbihan plantation was sold, it was sold with and as a part of it. Under these circumstances, we think that the plea of prescription of 10 years was applicable and should have been sustained, even had the plaintiffs shown that they had acquired the titles of Mrs. Harriet P. Hopkins and Harvey Hopkins, which they failed to do.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that plaintiffs’ demand be rejected, and their suit dismissed, at their cost in both courts.
The CHIEF JUSTICE takes no part.